## Platter v. Platter

*Archibald M. Matthews*, for plaintiff.
*Shaver & Heckman*, for defendant.

LANSBERRY, P. J., August 2, 1951.—In this equity proceeding plaintiff seeks a decree of reformation by striking from the deed of conveyance a material alteration placed thereon, and enjoining defendant from exercising any rights in the property and enjoining defendant from any occupancy of or trespassing upon

the property described in the deed. Defendant resists the entry of such decree and specifically denies the fraud alleged by plaintiff, asserts laches and unclean hands on the part of plaintiff and asserts certain rights in and upon the premises, the subject matter of this litigation.

The complaint, answer and reply thereto came on for hearing and thereafter requests for finding of fact and conclusions of law were filed and the issues are now before the chancellor for disposition.

A brief chronological statement of the facts which give rise to this litigation may be stated as follows: Prior to 1924, plaintiff, Lulu Platter, and defendant, Harry E. Platter, were wife and husband but domestic difficulties arose between the parties and following a contested action in divorce, a decree a. v. m. was entered of record in the Court of Common Pleas of Somerset County in 1924; this plaintiff, Lulu Platter, maintains she did not have actual knowledge of the entry of that decree in divorce nor did she make any effort to ascertain the outcome of that contested divorce action; the decree in divorce, although recorded, was not actually lifted by the successful libellant, Harry E. Platter, this defendant; about 1926 these parties were apparently reconciled and decided to live and cohabit as husband and wife, which they did until the early part of 1950; no marriage was celebrated between them after their reconciliation; on April 30, 1930, Amanda Casteel, owner of the premises in which these parties were then residing, executed, acknowledged and delivered a deed for the improved real estate to Lulu Platter, the sole grantee; the latter retained possession of that deed until December 5, 1942, when both of these parties appeared at the office of the Recorder of Deeds of Somerset County where, in the presence of defendant, this plaintiff specifically re-

quested the recorder of deeds to add to the deed immediately following the name Lulu Platter, grantee, the following words: "And Harry E. Platter, husband and wife, of the same place, as an estate by the entireties"; acceding to plaintiff's request, these words were added to the deed by the recorder of deeds and the deed as altered was recorded in Deed Book, vol. 329, page 566; this deed as recorded was returned by mail to Lulu Platter and has been in her possession since recording; the parties continued to reside in the house and in early 1950 this plaintiff instituted a prosecution for nonsupport in the quarter sessions court of this county; at the hearing thereof, this defendant asserted he was not liable for her support because he was not the husband of the prosecutrix and exhibited the divorce record in support of that defense; the present litigation was subsequently instituted by this plaintiff and at the time of the institution of these proceedings both parties were still residing in the property although in separate rooms.

At the trial and in both the oral argument and written brief, defendant, while conceding that the deed as altered did not operate to create an estate by the entireties, strongly contended that the deed as altered must be construed as having created a tenancy in common, relying upon the line of cases of which Frederick, Admr., v. Southwick, 165 Pa. Superior Ct. 78, is illustrative. This contention is based upon considerable testimony offered and admitted over objection to the effect that defendant had contributed substantial sums of money, as well as labor, in the purchase, maintenance, repair and improvement of the property and that the addition of defendant's name to the deed was in consideration of those various contributions to the property. Plaintiff not only denied this testimony as to the alleged consideration, but contends that the addition of the name of defendant is

a nullity and of no effect and that she is in need of equitable relief, there being no adequate remedy at law for her.

At the hearing we permitted the introduction of considerable testimony from both parties in support of their averments contained in the complaint and answer on the disputed questions of fraud, payment of the original consideration for the property and payment of the numerous repairs and improvements to the building and property; as indicated, much of this proffered testimony was admitted over objection but we shall not now recite the same nor rule formally upon its proper or improper admission for the reason that the conclusion we have reached on the fundamental and primary question herein renders that testimony immaterial at this time.

The first and fundamental question presented by the facts recited is this: where a deed of conveyance has been executed, acknowledged and delivered by the grantor, the sole owner of the premises described, to the single named grantee therein, which deed recites a valuable consideration and an acknowledgment of the payment thereof, and after delivery of the deed but before the recording thereof, the sole grantee requests the recorder of deeds to add the name of a man she mistakenly or otherwise believed to be her husband to the deed as an additional grantee, and as thus amended the deed is recorded, what is the legal effect of such alteration? Our answer is that the alteration by the addition here made is a nullity and of no legal effect and further that the addition of the name of another supposed grantee did not divest the original grantee of her title so as either to invest it in a new grantee or to revest it in the grantor. It must not be overlooked that in 1930 when Amanda Casteel delivered the deed of conveyance to Lulu Platter, she being in possession of the described and conveyed premises, the

absolute title to the premises then and there vested in Lulu Platter; only by a recognized mode of conveyance could she divest herself of that title or any part of it or vest it or any part of it in any other person. That there was a spoilation or material alteration of this deed after delivery admits of no doubt; however, such alteration destroys not the estate but the memorial or evidence thereof only. Nor does it alter the situation that the grantee herself caused the spoilation or material alteration; her attempt to create an estate by the entireties or vest an undivided interest either with or without the right of survivorship in the estate in defendant was equally as ineffectual as the scrivner's act in inserting the words themselves.

The essential fact to keep in mind here is that the grantor, Amanda Casteel, conveyed the described property to Lulu Platter; that Amanda Casteel did not convey it to Lulu Platter and Harry E. Platter. This pertinent fact alone distinguishes this case from many of the authorities relied upon by defendant, as will be subsequently seen.

We find the conclusion we have reached here is supported by numerous authorities.

In Rifener v. Bowman et al., 53 Pa. 313, 318, Woodward, C. J., said:

"If a grantee of land alter or destroy his title-deed, yet his title to the land is not gone. It passed to him by the deed, the deed has performed its office as an instrument of conveyance, and its continued existence is not necessary to the continuance of title in the grantee—but the estate remains in him until it has passed to another by some mode of conveyance recognized by law. It is the instrument which is rendered void, not the estate: 1 Greenl. §568; Withers v. Atkinson, 1 Watts. 236."

This rule is cited with approval in McIntyre v. Velte, 153 Pa. 350; and to the same effect is the

first sentence of Gibson, J., in his opinion in Miller v. Gilleland, 19 Pa. 119; additional authority is Wallace v. Harmstad, 44 Pa. 492.

In Moore v. Bickham & West, 4 Binney 1, the stringency of the rule against alteration of a deed was stated by Tilghman, C. J., in these words:

"Where a deed has been acknowledged before a magistrate appointed by law to take and certify the acknowledgment, in order that the deed may be recorded, the parties have no right to make the most trifling alteration. An altered deed is not the same which is certified. The act of the magistrate is independent of the parties, and no consent of theirs can warrant them in falsifying it."

As indicated in the review of the question of alteration of deeds by Huston, J., in Withers v. Atkinson, 1 Watts 236, beginning at page 249, while the strictness of the ancient rule has been somewhat relaxed and modernized, it nonetheless remains the law that if a deed be altered after delivery the alteration destroys the deed but does not destroy the estate.

Again, in 2 Am. Jur., Alteration of Instruments, §37, it is stated:

"It is well settled as a general rule that the subsequent alteration of an instrument under and by virtue of which the title to property has become vested in the grantee therein does not invalidate the instrument insofar as it operates as a conveyance, and, therefore, does not in any way affect the title of such grantee to the property so conveyed."

May we now revert to defendant's contention founded upon the doctrine reiterated in Frederick, Admr., v. Southwick, supra, and similar cases to the effect that the court shall determine the joint ownership "appropriate under the circumstances" where the grantees take title but are in fact not husband and wife even though thus described as such: Thornton

et al. v. Pierce, 328 Pa. 11; Maxwell v. Saylor, 359 Pa. 94; and also the statement of the law in other jurisdictions as found in 41 C. J. 447 and cases cited thereto.

In Thornton v. Pierce, supra, it will be observed that the original grantor did convey to Sadie Russell the two properties concerned in that litigation and she, assuming her husband to be dead, married one Pierce and thereafter by the fiction of a third party she and her assumed husband conveyed the property to the third party who reconveyed the same to both parties with a recital that "the purpose of this deed is to vest in the grantees named herein an estate by entireties."

And in Frederick v. Southwick, supra, a footnote clearly indicates that the grantor named both grantees in his instrument of conveyance at the execution, acknowledgment and delivery thereof. Similarly in Maxwell v. Saylor, supra, "when the Green Street property was purchased title was taken in the name of Raymond Maxwell and Emma Maxwell, 'his wife' (although not legally his wife) and the grant was to them, 'their heirs and assigns, as tenants by the entireties'."

The most recent case we have found supporting defendant's contention is Teacher v. Kijurina, 365 Pa. 480, which arose in the adjoining County of Westmoreland and was decided by our Supreme Court on November 13, 1950, in which case the relevant fact was that Nick Kijurina and Sara Jaic lived together as husband and wife, although not married, on a farm "title to which they had acquired in 1935, which was conveyed to them under the names Nick Kijurina and Sarah his wife"; other properties were subsequently acquired in like manner as to title. It was held the title to the real estate was that of tenants in common, reiterating the proposition that the fact that the deed was ineffective insofar as creating an estate by the entireties, that did not wholly invalidate it nor pre-

vent the grantees from reserving and holding title under such form of tenancy as was appropriate under the circumstances.

Obviously the facts in these cases are unlike those in the instant case. The distinction is this: in those cases relied upon by defendant, both grantees, even though not legally husband and wife although described as such, took by the identical conveyance and at the vesting of the estates and titles, whereas in the instant case defendant was not one of the grantees at the time of the vesting of the estate and title; more than that, he was not a grantee at any time, nor did he become such by the alteration of that deed at the time of recordation. Clearly, therefore, he was not a tenant in common as specifically contended and alleged in the answer to the tenth averment of the complaint.

Defendant's contention implies a secondary question; in view of the alleged contributions of money and labor by defendant in the maintenance and improvement of this property, in the mistaken belief that he was a cotenant with plaintiff, do these facts constitute an implied or resulting trust in favor of defendant? Counsel for defendant has not so contended in this proceeding, apparently preferring to rely on the contention that defendant was one of the tenants in common. Notwithstanding the conflicting evidence before us upon which reliance might be placed to establish such, we shall not pass upon the question we have raised since it was neither averred in the pleadings nor actually contended for in the requests for findings of either fact or law. In passing this question we are not unmindful of the equity maxim: Equity delights to do justice and not by halves, which maxim is the basis for the frequently quoted rule in equity that where the court has assumed jurisdiction for one purpose, it will retain it for all purposes. This rule has

certain limitations among which is that the rule will not be followed by the court in violation of the basic doctrines of pleading: 30 C. J. S. Equity, §67.

For the reason that plaintiff, upon learning of the legal effect of the decree in divorce entered in 1924, proceeded forthwith to institute this complaint, we do not find her guilty of laches. Nor do we need to pursue the averment of fraud against this defendant or the allegation of unclean hands on the part of this plaintiff, as the evidence as a whole tends to establish and we prefer to view the same (without here deciding) as a mistaken understanding on the part of both parties as to the proper method of conveyance of title to real property and can only suggest that had these parties employed either of the able counsel, who represented them now, at the time of the recording of the deed this litigation could have been avoided.

Having determined the primary and fundamental issue presented by these pleadings and this evidence and having found that the alteration of the deed was a nullity and of no effect, we now enter the following

### Decree

Now, August 2, 1951, the complaint; answer and reply having come on for full hearing, and requests for findings of fact and conclusions of law having been presented and counsel having been heard at length and all of the same having been considered at length, it is in accordance with the opinion hereto filed, ordered, adjudged and decreed that:

1. The court of equity does have jurisdiction of the parties and the subject of this complaint in equity.

2. The alteration of the deed was in fact and law a nullity.

3. The title and estate described in the deed of conveyance vested in the single named grantee herein, being plaintiff herein, at the time of the delivery of

the deed of conveyance, which title and estate therein remains vested as of this time.

4. The alteration of the deed, being the words, "and Harry E. Platter, husband and wife, of the same place, as an estate by the entireties," is hereby stricken from the deed.

5. The recorder of deeds shall enter upon the margin of the record of this deed in Deed Book, volume 329, page 556, a reference to these proceedings as follows:

For reference to opinion and decree of the Court of Common Pleas sitting in Equity, striking the alteration from this deed, see proceedings had to No. 6 Equity Docket, 1950.

6. The record costs of this proceeding shall be paid by defendant.

### AMENDMENT TO DECREE

LANSBERRY, P. J., August 4, 1951.—Now, the court having inadvertently overlooked all of the provisions of Equity Rule 67, it is now agreeable to Equity Rule 67(5) ordered and directed that the decree entered in the within captioned complaint in equity on August 2, 1951 is amended and corrected to read, *decree nisi* and the same is further amended by adding paragraph 7 thereto as follows:

7. This decree shall be entered by the prothonotary as a decree nisi, the same to become final unless exceptions are filed thereto within 30 days from August 2, 1951.

The exception heretofore granted shall apply to these amendments to the decree.

### OPINION SUR EXCEPTIONS

LANSBERRY, P. J., April 23, 1952.—This complaint in equity, answer and reply came on for hearing and disposition by the chancellor resulting in a decree nisi as amended, supra. Exceptions to the decree nisi,

as well as to the findings of fact and conclusions of law, were filed by defendant and simultaneously therewith defendant presented a petition for bill of review, subsequently amended to read petition for rehearing under Equity Rule 78, upon which petition a rule to show cause was awarded by the court. Plaintiff filed her answer resisting the granting of the petition for review or rehearing. Subsequently, counsel for both parties presented oral arguments, additional requests for findings of facts and conclusions of law and written briefs in support of their several contentions.

In the opinion accompanying the decree nisi, supra, we concluded that where a grantor conveyed real estate to a single grantee and that grantee later requested the recorder of deeds to add to the deed the name of the man with whom she was living and whom she mistakenly believed to be her husband, which addition was made by the recorder and the deed as altered then recorded, the deed was a nullity so far as the alteration was concerned and no estate or title by virtue of the alteration passed to or vested in the party whose name was added to the deed. In the original hearing, defendant, Harry E. Platter, whose name was added to the deed, advanced the contention that he was a tenant in common with plaintiff, Lulu Platter, which contention we rejected but, in view of the testimony presented at the hearing, we suggested in our opinion that defendant may be entitled to equitable relief and invited further discussion and consideration of that question of his equitable interests if any. At that time we purposedly refrained from disposing of that question, preferring to hear counsel formally so that full consideration might be given to that phase of this equity proceeding. The petition for rehearing followed and counsel for both parties have since indicated to the court that they have no additional testimony to offer.

The various pleadings and testimony present the following two preliminary questions which we shall dispose of in order:

1. Exceptions on behalf of defendant to the findings of fact, conclusions of law and decree nisi heretofore entered.

2. The rule awarded on defendant's petition for rehearing and plaintiff's answer resisting that petition.

1. As to the exceptions entered to our findings of fact, exception 1(a) relates to the question of whether or not there was a trust created in favor of defendant, the phase of the litigation we previously refrained from passing upon and which will be considered later herein; exception 1(b) asserts there was no fraud on the part of defendant in assisting in having his name placed upon the deed; the contention is the court erred in not so finding; our answer again is as stated in the opinion that we did not desire to pursue the averment of fraud upon the part of defendant, preferring to view the same, without there deciding, as a mistaken understanding on the part of both parties; this exception likewise will be subsequently considered; exception 1(c) concerns the allegation of fraud on the part of plaintiff and may be passed at this point; complaint is made in exception 1(d) that we did not affirmatively find that "the change of title was the act of both of the parties to this action, etc." Our answer is that the exception must be dismissed because we cannot find any change whatsoever in the title. When the grantor conveyed to this plaintiff the property described in the deed, the legal title and estate then and there vested in her and no matter what actions the parties subsequently took nor the reasons for those actions could they or did they change that title and estate in her by the method they pursued. Exception 2 to our find-

ings complains that the court did not affirmatively find the amount of contributions by defendant to the improvement of the property; that exception concerns the question of equitable interest which we preferred to examine more fully and which will be hereinafter considered.

Defendant excepts to our conclusions of law, again contending that we should have found as follows: 1(a) That if there was any fraud in the procuring of defendant's name on the deed it was plaintiff's and not defendant's fraud; our answer is that we have not found as a fact any fraud in the transaction; 1(b) knowledge of the true marital status was equally accessible to both; this is a correct statement of fact but it is not a legal conclusion nor is it determinative of the issue; 1(c) concerns our not concluding that there was a tenancy in common or joint tenancy by the alteration of the deed; we can add nothing to what we previously said as to this point; exception 2(a) is to the effect that the alteration of the deed was a nullity, and 2(b) is to our finding that it was immaterial that plaintiff procured the alteration; these exceptions must be refused; exception 2(c) complains that we did not conclude as a matter of law that there was a resulting or implied trust in defendant's favor by virtue of the contributions made by him in the mistaken belief that he was a coöwner of the property; the exception is without merit because we did not find otherwise and because that touches the very question we preferred to reserve for further consideration.

Defendant excepts to every portion of our decree nisi save as to the jurisdiction of the chancellor. We have reconsidered that decree nisi, as well as the authorities submitted, and are satisfied that the decree is proper as to the matters therein passed upon. Our considered judgment is that the exceptions entered by defendant cannot be sustained.

2. We now come to the matter of defendant's peti-
tion for a bill of review or rehearing under Equity
Rule 78. This plaintiff strenuously resists, relying
upon various cases, including Hedley v. Snipes, 124
Pa. Superior Ct. 396; Fell v. Pitts, 263 Pa. 314, and
Bosses et al. v. Mahalsky et al., 41 Luz. 189, af-
firmed in 365 Pa. 184. Those cases are not applicable
in the instant litigation for the reason that we speci-
fically refrained from passing upon the one theory
of defendant, viz., that of defendant's equitable inter-
ests, if any, and moreover, we inferentially invited
further consideration by counsel of this contention,
leaving it to counsel whether or not to pursue the
matter further. Hence we do not regard this equitable
interest contention as having been abandoned by de-
fendant at the original hearing or a subsequent change
of theory on the part of defendant and accordingly
shall make the rule absolute and proceed to a consid-
eration of the question of the equitable interests in
favor of defendant, if any he has.

The testimony in this record unfortunately, but
understandably so, lacks the precision, definiteness
and fullness which is desirable and thereby imposes
upon the chancellor the burden of searching and con-
struing the testimony very carefully in finding the im-
portant and pertinent facts; however, a brief sum-
mary of the testimony discloses the basis for the
several contentions before us.

Lulu Platter, plaintiff, testified in substance as
follows: That about two years following the hearing
in the divorce action between these two parties, which
action was instituted by Harry Platter, defendant
here, he returned to the property in which she resided,
told her that the authorities would not grant the
divorce, upon which statement she relied, and there-
after the parties lived together as husband and wife

for approximately 20 years; in 1930 Lulu Platter purchased the property with her own money received from various sources, including money from her son, from raising and marketing chickens, from keeping boarders and from insurance money paid when the furniture was destroyed by fire. She further testified that Harry Platter asked to have his name placed on the deed, asserting he was her husband and, relying upon that statement, she caused his name to be added to the deed. She admitted that he worked as regularly as work was available, furnished the food for the home and did furnish and make some repairs to the house, limiting those repairs and improvements to sills under the kitchen, a partial new porch, one heater boiler, some plaster board and shingles for two sides of the house, and asserted she never asked him to fix and repair the house. She admitted he caused savings bonds to be placed in their joint names in a payroll savings plan but testified that only after she purchased them from Harry Platter did she cash them. Lulu Platter testified that she with her own money paid the real estate taxes with the possible exception of two years which she admitted he paid. In one pertinent feature of her testimony she was corroborated by her son, who testified that over the 20-year period he gave his mother between $1,000 and $1,100.

Defendant's testimony denies much of plaintiff's testimony and presents a much different aspect of the situation. Harry Platter testified that he did not sell her the furniture which she maintained he sold to her and he denied signing the receipt therefor; he testified that Lulu Platter asked him to come back to her and that he did not know for sure that he was divorced, stating that he did not lift the decree in divorce. He testified that the approximately $300 insurance money received when his furniture was burned was used in

part payment of the property in this litigation and that his money purchased much of the furniture they purchased and used from time to time. Defendant asserted and insisted that his name was placed on the deed at the time of recording in consideration of his furnishing materials and labor in repairing the house and that it was because his name was placed on the deed that he did furnish the materials and did make the repairs to the house. Defendant further testified that at his expense and labor certain materials and supplies were furnished and work done, including furnishing and placing shingles on two sides of the house, new sills under most of the house, some new windows, new porch, beaver board partitions and some new doors, two heater boilers, a water pump in the cellar, and he concluded by saying that the materials furnished and labor hired and performed amounted to $1,800, all of which he paid from his earnings. He further testified that, except for one year's taxes, it was his earnings from which the taxes were paid regardless of who actually made the payments and that he paid all of the store bills, which averaged about $150 per month. Defendant denied telling Lulu Platter that the divorce had not gone through, but explained this testimony by stating he knew it was granted but he didn't lift it because he did not have the money at the time and apparently concluded in his own mind that it was not effective. As to several features defendant was corroborated but a careful reading of the testimony discloses that it is largely "oath against oath."

From all of the testimony we have found and now under the following

### Findings of Fact

1. Harry Platter and Lulu Platter were husband and wife prior to March 31, 1924, on which date a

valid decree of divorce was entered by the Court of Common Pleas of Somerset County, Pa.

2. Although the parties became reconciled after the decree of divorce and cohabited as husband and wife from 1930 until the early part of 1950, they were not legally husband and wife.

3. On April 30, 1930, Amanda Casteel conveyed certain real estate with improvements thereon to Lulu Platter, by which conveyance the full and complete title and estate vested in the sole grantee therein and which full and complete title remains vested in the single grantee named therein.

4. On December 5, 1942, the deed of conveyance from Amanda Casteel to Lulu Platter was altered and amended by adding thereto the words "and Harry E. Platter, husband and wife, of the same place, as an estate by the entireties", and as amended and altered the deed was recorded.

5. The alteration and amendment made to the deed was made as the result of a mutual misunderstanding on the part of both parties and the scrivener as to the legal effect thereof.

6. By this alteration and amendment both parties and the scrivener intended to create as to Harry Platter and Lulu Platter an estate by the entireties.

7. Plaintiff here, Lulu Platter, caused the deed to be altered and amended in consideration of this defendant, Harry Platter, furnishing certain materials and labor in and for the repair and improvement of the building erected on the lots, which consideration was agreed to by Harry E. Platter.

8. Harry E. Platter furnished certain materials and labor for the repair and improvement of the property in accordance with the understanding of the parties placing his name on the deed as a party grantee.

9. There is no evidence of fraud on the part of either Lulu Platter or Harry E. Platter.

10. Neither party actually knew the legal status of their marriage when the deed was altered and amended nor did Harry E. Platter know the legal effect of the granting of the unlifted decree in divorce.

11. Both parties failed to ascertain the true status of their marriage and the contested divorce action although such information was equally available to both parties.

12. The alteration of the deed was not the result of false or fraudulent representations by Harry E. Platter.

13. Harry E. Platter, together with Lulu Platter, occupied the home owned by Lulu Platter without the payment of rent as such by him.

14. During his occupancy of the home of Lulu Platter, defendant furnished the food consumed by both parties and contributed to the purchase of items of furniture, household supplies and the usual and normal costs of maintaining a household.

## Discussion

At the oral argument and in counsel's brief, plaintiff contends: (1) That no trust arose in favor of defendant because there was fraud on the part of defendant; (2) that no restitution can be decreed in favor of defendant because of his fraud upon plaintiff, and (3) that even if there were no fraud upon the part of defendant he would not be entitled to restitution because the value of the use and occupancy of the premises exceeded any contributions to the payment of taxes and repairs which he may have made. While we agree with counsel's first contention that no trust arose, we do so because of another reason in this case, as will be subsequently observed. The second contention, grounded on fraud, must be rejected because we have found as a fact an absence of fraud on the part of defendant as well as plaintiff under all

the circumstances. The third contention must also be rejected; although the evidence is not as definite, full and precise as we would desire, careful scrutiny of the evidence at hand constrains us to an opposite conclusion; there is sufficient evidence as to the contributions by this defendant in the improvement of the property and the payment of taxes in addition to the ordinary household expenses which requires equitable relief by way of restitution in this equity proceeding.

Defendant's counsel has advanced two contentions in support of the equitable relief sought both in the original answer filed to the complaint and in the petition for rehearing as follows: (1) That the contribution of money and labor by defendant in the maintenance and improvement of plaintiff's property in the mistaken belief that defendant was a cotenant with plaintiff resulted in a constructive trust in favor of defendant, and (2) that the court in order to do full justice between these parties should decree reimbursement by plaintiff to defendant of such an amount as the chancellor finds was made by defendant.

As indicated in answering plaintiff's first contention, our answer to defendant's first contention is that no constructive trust arose in these circumstances. A constructive trust arises and may be decreed to prevent unjust enrichment when there is an equitable duty upon the title holder to convey the property. The proposition is succinctly stated in A. L. I. Restatement of the Law of Restitution, §160:

"Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises."

It is manifest in this case that Lulu Platter is under no equitable duty to convey this property to Harry Platter; hence no constructive trust arises here in

favor of Harry Platter and the contention must be rejected.

Defendant's second contention seeking equitable relief in the premises is in substance seeking an equitable lien as a charge upon the land. An equitable lien, like a constructive trust, arises not because of a manifestation of an intention to create it, but it is imposed in proper cases to prevent unjust enrichment. The doctrine of equitable lien is likewise succinctly stated in A. L. I. Restatement of the Law of Restitution, §161:

"Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises."

This is particularly true where the improvements cannot be severed from the land and specific restitution is impossible and no constructive trust arises and yet equity requires restitution to prevent unjust enrichment.

In the instant case it is apparent that Harry E. Platter made valuable improvements to the property of Lulu Platter in the mistaken belief that he was a coöwner; he cannot have a conveyance of that land to him nor can he have a return of those improvements; to allow plaintiff Lulu Platter to retain the benefit of those improvements to her property without making restitution of some kind would result in an unjust and unintended enrichment in her favor. To prevent that the chancellor is constrained to grant equitable relief by decreeing an equitable lien in favor of this defendant.

The doctrine of equitable liens is part of the equity law of Pennsylvania jurisprudence: Skiles' Appeal, 110 Pa. 248; Gladowski et al. v. Felczak et al., 346 Pa. 660; General Casmir Pulaski Building & Loan

Association v. Provident Trust Company, of Philadelphia, et al., 338 Pa. 198.

Based upon the facts as found and the law applicable thereto we now enter the following

### Conclusions of Law

1. This court of equity has jurisdiction of both the parties and the subject matter herein concerned.

2. The parties, Lulu Platter, plaintiff, and Harry Platter, defendant, are not wife and husband, they having been divorced by decree of divorce entered March 31, 1924.

3. The parties are not coöwners of the property herein concerned, the legal title and estate being vested in Lulu Platter, the sole grantee in the conveyance from Amanda Casteel.

4. The alteration of the deed was a nullity insofar as vesting any title to the property in Harry Platter.

5. Neither of the parties have committed a legal fraud upon the other with reference to the property, the subject of this litigation.

6. The parties agreed for a valuable consideration that Harry E. Platter make certain repairs to the property, which repairs and improvements were made, whereby the value of the property was enhanced and preserved.

7. There is no constructive trust in favor of Harry E. Platter as to this property.

8. Defendant, Harry E. Platter, is entitled to a decree of equitable relief by creation of an equitable lien against the property in his favor.

9. There is sufficient evidence upon which to fix the amount of the equitable lien in favor of defendant.

10. As a matter of equity between the parties the record costs should be divided between them.

Although we have heretofore entered a decree nisi as to the question of title and may now enter a final

decree to that extent, we prefer to enter a formal decree nisi herewith touching the matter of title and as well the matter of equitable lien so that they may be considered in their proper relation to each other; hence the following

*Decree Nisi*

Now, April 23, 1952, the complaint, answers and replies having come on for full hearings and requests for findings of facts and conclusions of law having been submitted by counsel for both parties, and the same having been considered at length in accordance with the opinions heretofore and herewith filed, it is ordered, adjudged and decreed that:

1. The court of equity does have jurisdiction of the parties and subject matter of this complaint in equity.

2. The alteration of the deed was a nullity insofar as conveying or vesting any title to the real estate described in this complaint.

3. The title and estate described in the deed of conveyance vested in the single named grantee therein, being plaintiff herein, at the time of the delivery of the deed of conveyance, which title and estate remains so vested as of this time.

4. The alterations of the deed, being the words, "and Harry E. Platter, husband and wife, of the same place, as an estate by the entireties" are hereby stricken from the deed.

5. The title and estate now vested in Lulu Platter in the real estate described in the deed of conveyance from Amanda Casteel to Lulu Platter dated April 30, 1930, and recorded in Deed Book, vol. 329, page 556, in the recorder's office at Somerset, Pa., is subject to, and there is hereby created, an equitable lien in the amount of $1,000 in favor of Harry E. Platter.

6. The Recorder of Deeds is hereby authorized and directed to enter upon the margin of the record of the above recited deed, the following:

"For reference to the opinion and decree of the Court of Common Pleas sitting in Equity, striking the alterations from this deed and the creation and entry of an equitable lien against the property described in the deed of conveyance, see proceedings had to No. 6 Equity Docket, 1950 in the Court of Common Pleas of Somerset County, Pennsylvania."

7. Upon payment and satisfaction of the equitable lien in favor of Harry E. Platter and hereby created against the property described, Harry E. Platter shall, at his own costs, make, execute, acknowledge and deliver a quitclaim deed releasing and satisfying the equitable lien.

8. The record costs of this proceeding shall be paid one half by plaintiff and one half by defendant.

9. The prothonotary shall enter this decree nisi and give notice to the parties, or their counsel of record, of the entry of this decree agreeable to Equity Rule 68; if no exceptions are filed within 10 days of giving the above notice, the decree nisi shall be entered by the prothonotary as the final decree agreeable to Equity Rule 70 and a certified copy of the final decree shall be delivered to the Recorder of Deeds of Somerset County, Pa.; if exceptions are filed the same shall be set down for hearing at the June 1952 argument court.

### Opinion sur Exceptions

LANSBERRY, P. J., July 7, 1952.—In this equity proceeding we now have 21 exceptions to our findings, conclusions and decree nisi, many of which have been considered and answered in two previous opinions, following extended arguments both orally and by briefs submitted. Here we need only review the factual situation, refer to our conclusions and then consider the substance of the exceptions argued at the last argument court.

Harry Platter, this defendant, and Lulu Platter,

this plaintiff, were prior to March 31, 1924, husband and wife; on that date a decree in divorce a. v. m. was entered following a contested action in divorce; the decree was not lifted by either party; the parties, notwithstanding the decree in divorce, became reconciled and lived and cohabited together for a period of 20 years thereafter; soon after they were reconciled plaintiff, Lulu Platter, purchased a property in which the parties lived, taking title in her own name; the parties were never remarried; in 1942 the deed was altered by adding the words "and Harry E. Platter, husband and wife, of the same place as an estate by the entireties", and as altered the deed was recorded. Numerous repairs and improvements were furnished and made to the property by Harry E. Platter in accordance with an understanding between the parties, the consideration being the placing of his name on the deed. Harry Platter paid most of the real estate taxes, furnished the food for their table, purchased furniture and in various ways expended his efforts and money as is usually and customarily done by a husband in addition to the property repairs and improvements. Mrs. Platter also worked part of the time.

When this litigation was first before the chancellor, we concluded and held that the deed, as altered and recorded, was a nullity insofar as the alteration was concerned and neither vested any title or estate in Harry E. Platter nor diminished or changed the title in Lulu Platter as the same was vested upon the execution and delivery of the deed to her. Our reasons and authorities for that holding fully appear in the opinion appearing supra and no purpose would be served by reciting them here except to say that in that opinion we inferentially suggested to counsel that there was another question involved, namely that of equitable relief, and left it to counsel to pursue the matter fur-

ther if they so desired. Counsel for defendant did pursue the matter further.

Defendant then contended that since he furnished money for food, furniture and other items in addition to supplying money and labor for the repairs and improvements of the real estate in pursuance of the understanding between the parties, the chancellor should decree a constructive trust in his favor in the property. This contention we rejected for reasons which clearly appear in our opinion found supra. However, in that same opinion and the decree nisi, which decree is now before us on the present exceptions, we decreed an equitable lien in the amount of $1,000 in that real estate in favor of defendant, Harry E. Platter.

Although counsel for plaintiff has not abandoned any of the exceptions filed, at the argument court he pressed only one subject or phase of his exceptions which we shall now state and answer. He contends that since Harry Platter was not a coöwner of the property he must be considered as a tenant therein and the chancellor should have taken into consideration the rental he should have paid over the years in fixing the amount of the equitable lien. Our answer is that we did consider this item along with all the other items in arriving at the amount of the equitable lien. Defendant contended and offered testimony to show that in addition to the household expenses paid by him over the period of 20 years he paid by way of taxes and materials for repairs and improvements to the property at least $1,800 and suggested it might have been more if he had his various receipts and could recall the various expenditures. Unfortunately, but not unexpectedly, the testimony from both parties as to the amount and extent of moneys advanced and paid by both parties was not that which is desired in

a litigated controversy; it is almost impossible, under the circumstances, to produce all the testimony on the subject which would have been desirable. Of necessity, therefore, the amount of the equitable lien is somewhat arbitrary, but we are satisfied after again reviewing all the testimony offered by both parties that the amount of the lien as we fixed it is supported by the record. If our conclusion that defendant is entitled to equitable relief by way of decreeing an equitable lien in his favor is the correct conclusion, and we are satisfied that it is after a further consideration of the whole record, then we are equally satisfied that the amount of the lien as we have fixed it is the equitable, fair and just amount under all of the evidence.

At the argument court, counsel suggested that another hearing be had to call witnesses as to the rental value of the premises. We think the offer is unnecessary as we are familiar with the premises and the neighborhood. Moreover, when the matter was previously heard we inquired of counsel whether either desired to present any additional testimony, to which inquiry the answer was negative.

Having reconsidered all of the exceptions to our opinions and decree nisi interposed by plaintiff and concluding as we do that they are all without merit, we shall now enter the following

### Final Decree

Now, July 7, 1952, the within proceeding in equity having come on for further consideration by way of exceptions and the same having been considered, it is ordered, adjudged and decreed that:

1. The court of equity does have jurisdiction of the parties and subject matter of this complaint in equity.

2. All of the exceptions filed by plaintiff be and the same are hereby overruled.

3. The alteration of the deed was a nullity insofar as conveying or vesting any title to the real estate described in this complaint.

4. The title and estate described in the deed of conveyance vested in the single named grantee therein, being plaintiff herein, at the time of the delivery of the deed of conveyance, which title and estate remains so vested as of this time.

5. The alterations of the deed, being the words "and Harry E. Platter, husband and wife, of the same place, as an estate by the entireties" are hereby stricken from the deed.

6. The title and estate now vested in Lulu Platter in the real estate described in the deed of conveyance from Amanda Casteel to Lulu Platter dated April 30, 1930, and recorded in Deed Book, Vol. 329, page 556, in the recorder's office at Somerset, Pa., is subject to, and there is hereby created, an equitable lien in the amount of $1,000 in favor of Harry E. Platter.

7. The recorder of deeds is hereby authorized and directed to enter upon the margin of the record of the above recited deed, the following:

"For reference to the opinion and decree of the Court of Common Pleas, Sitting in Equity, striking the alterations from this deed and the creation and entry of an equitable lien against the property described in the deed of conveyance, see proceedings had to No. 6 Equity Docket, 1950 in the Court of Common Pleas of Somerset County, Pennsylvania."

8. Upon payment and satisfaction of the equitable lien in favor of Harry E. Platter and hereby created against the property described, Harry E. Platter shall, at his own costs, make, execute, acknowledge and deliver a quitclaim deed releasing and satisfying the equitable lien.

9. The record costs of this proceeding shall be paid one half by plaintiff and one half by defendant.